```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
ROBERT GRANGER,                                                   :
                                                                  :
                              Plaintiff,                          :     13-CV-3569 (JMF)
                                                                  :
             -v-                                                  :     MEMORANDUM OPINION
                                                                  :            AND ORDER
MANHATTAN AND BRONX SURFACE TRANSIT                               :
OPERATING AUTHORITY,                                              :
                                                                  :
                              Defendant.                          :
                                                                  :
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/15/2014

JESSE M. FURMAN, United States District Judge:

Plaintiff Robert Granger brings this lawsuit alleging that Defendant Manhattan and Bronx Surface Transit Operating Authority (the "Transit Authority") discriminated against him in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*. Defendant moves for summary judgment, arguing — among other things — that Plaintiff's claims are barred by a stipulation and release that he signed. For the reasons stated below, Defendant's motion is GRANTED, and the Complaint is DISMISSED.

## BACKGROUND

The facts relevant to this motion are undisputed. (Mem. Supp. Def.'s Mot. Summ. J. (Docket No. 21) ("Def.'s Mem.") 4-5); *see also* Aff. Robert Granger Opp'n Def.'s Mot. Summ. J. (Docket No. 22) ("Granger Aff."), Ex. 3 (Stmt. Material Facts Pursuant to Rule 56.1 with Pl.'s Response ("Rule 56.1 Stmt."))). Defendant is a public authority in the State of New York. In 2003, Defendant hired Plaintiff as a Bus Maintainer Chassis (Decl. Mitchell J. Paluszek, (Docket No. 20) ("Paluszek Decl."), Ex. C (Deposition of Robert Granger ("Granger Depo.")) 6:13-15), a safety-sensitive mechanic position. (Paluszek Decl., Ex. F (Drug and Alcohol Policy)). Public

employees working in safety-sensitive jobs may be subject to random drug testing, *see* 49 C.F.R. § 655.1, procedures for which are extensively regulated by the Department of Transportation, *see id.* § 40 *et seq*. Among other things, employees are given up to three hours to provide a sufficient urine sample. *See id.* § 40.193(b)(2)-(4). If an employee fails to provide a sample in that time, and there is no adequate medical explanation for the failure, an employee is deemed to have refused to test — which, in turn, is treated as a positive test. *See id.* § 40.191(a)(5); *see also id.* § 40.193(e) (defining acceptable medical explanations for a failure to provide a sample).

In August 2010, Plaintiff tested positive for marijuana and cocaine. (Granger Depo. 9:24-10:6; Rule 56.1 Stmt. ¶ 30). Because he was a first-time offender and submitted to three months of rehabilitation, no disciplinary penalty was imposed. (Granger Depo. 10:7-12:6; *see* Paluszek Decl., Ex. E (Appendix E-1 to the Agreement between New York City Transit Authority, Manhattan and Bronx Surface Transit Operating Authority, and Transport Workers of America, Local 100, AFL-CIO) ("CBA App'x E-1")) § 10.1). After returning to his job as a Bus Maintainer Chassis, Plaintiff was required to submit to — and passed — more than twenty random drug tests between November 2010 and March 2012. (Granger Depo. 13:2-14:11; Rule 56.1 Stmt. ¶ 33). On March 5, 2012, however, Plaintiff was subjected to another drug test (Rule 56.1 Stmt. ¶¶ 36-37; Granger Depo. 14:12-15:11), and failed to provide a sample within the permitted three hours. (Rule 56.1 Stmt. ¶¶ 15, 42-43; Granger Depo. 18:23-25, 19:2-4). The next day, a physician selected by Defendant examined Plaintiff (Granger Depo. 24:8-16, 27:8-14), and concluded that Plaintiff had "[no] medical condition limiting the ability to urinate." (Rule 56.1 Stmt. ¶¶ 46-48; Paluszek Decl., Ex. G (March 14, 2012 Letter of Dr. Avram Nemetz) 2). On March 8, 2012, Plaintiff was examined by a urologist of his own choosing, who stated that Plaintiff did not have "any preexisting urologic history or any real voiding disturbance

2

except for the fact that [he] often repress[es] the urge to void and suppress urination when it conflicts with [Plaintiff's] day-to-day activities." (Rule 56.1 Stmt. ¶¶ 49-50; Paluszek Decl., Ex. H (March 8, 2012, Ltr. of Dr. John Fracchia)). Defendant's Medical Review Officer accepted those assessments, and therefore deemed Plaintiff's inability to produce an adequate sample a "refusal" to take the drug test. (Rule 56.1 Stmt. ¶ 51; Paluszek Decl., Ex. I (Clinic Visit Notes of March 20, 2012)).

On or about March 21, 2012, Plaintiff was served with a "Disciplinary Action Notification" for "refusal to take a Drug/Alcohol Test" — the first step in the disciplinary process prescribed by the collective bargaining agreement ("CBA") between Defendant and Plaintiff's union, the Transport Workers of America, Local 100 (the "Union"). (Paluszek Decl., Exs. D (CBA), J (Disciplinary Action Notification); Granger Depo. 7:4-10, 41:2-5). After conferring with his Union representative, Plaintiff chose not to accept the charges and recommended penalty of dismissal, and demanded an arbitration hearing pursuant to the provisions of the CBA. (Granger Depo. 43:5-44:25). Prior to the arbitration hearing, a Union representative advised Plaintiff that Defendant had offered to settle the disciplinary action and presented him with a proposed stipulation to that effect. (Granger Depo. 45:19-46:7; Granger Aff. ¶ 12). Plaintiff claims that he was told (by whom he does not say, but presumably the Union representative) that Defendant "had a room full of doctors" prepared to testify if he rejected the stipulation and chose to proceed with arbitration. (Granger Aff. ¶ 13). He further alleges that the Union representative stated that if he did not accept the stipulation, he would be "permanently dismissed" from his employment and would have difficulty finding new employment. (*Id.* ¶ 14).

On May 17, 2012, after consulting with the Union representative, Plaintiff signed the Stipulation and Agreement settling the matter.  (Paluszek Decl., Ex. N (Stipulation and Agreement Dated May 17, 2012 ("Stipulation")); Granger Depo. 48:14-22).  Pursuant to the Stipulation, the charges against Plaintiff were modified from refusal to test to "Second Time Positive for a Controlled Substance," and the penalty of dismissal was "sustained and modified" to require Plaintiff to complete a rehabilitation program, after which he would "be eligible for restoration to an available, budgeted non-safety-sensitive Cleaner position."  (Stipulation ¶ 2).  In exchange, and most relevant for present purposes, Plaintiff and the Union jointly and severally released Defendant "from any and all claims, whether at law, in equity or arising by virtue of contract which they may have or which they may have had heretofore in connection with the underlying disputes" in this case.  (Stipulation ¶ 4).  In or about September 2012, Plaintiff completed the required rehabilitation program and — consistent with the Stipulation — was re-employed by Defendant as a Cleaner.  (Granger Depo. 49:15-50:24).

On May 28, 2013, Plaintiff brought the instant lawsuit against the New York City Transit Authority claiming that it discriminated against him in violation of the ADA because it considered him to be a substance abuser and, therefore, refused to accept a proffered medical justification for his inability to provide a urine sample during the March 5, 2012 drug test.  (Compl. (Docket No. 1) ¶¶ 15, 20).  On July 16, 2013, the parties stipulated and agreed to add Defendant Transit Authority to this action and to dismiss Defendant New York City Transit Authority.  (Docket No. 5).  Defendant now moves for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a).  A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322–23); *accord PepsiCo, Inc. v. Coca–Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).  To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible."  *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).  Affidavits submitted in support or in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in

evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004).

## DISCUSSION

Defendant argues that the May 17, 2012 Stipulation bars this lawsuit. (Def.'s Mem. 5). Significantly, several propositions and facts relevant to that argument are not in dispute. First, Plaintiff does not, and cannot, dispute that a person may waive a potential civil rights cause of action through a stipulation with his employer. *See Reid v. IBM Corp.*, No. 95-CV-1755 (MBM), 1997 WL 357969, at *3 (S.D.N.Y. June 26, 1997) (holding that "an employee may waive a claim for discrimination [under the ADA] so long as the waiver is made knowingly and voluntarily" (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 & n.15 (1974)); *see also, e.g.*, *Thomas v. City of New York*, 305 F. App'x 754, 756 (2d Cir. 2009) (affirming dismissal of various discrimination claims, including those under the ADA, based on a stipulation Plaintiff signed barring those claims). Second, Plaintiff does not seem to dispute that the Stipulation, by its terms alone, bars him from bringing the claims in this case. (*See generally* Granger Aff. Ex. 4 (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. ("Pl.'s Mem.")) 19-24). And third, there is no real dispute that Plaintiff understood that the Union would have provided him with representation had he chosen to proceed with the arbitration (Granger Depo. 44:17-25); that he was entitled to continue with the arbitration if he chose not to sign the Stipulation (*id.* 49:3-8); and that, in signing the Stipulation, he was releasing all claims against Defendant in exchange for the ability to return as a Cleaner after completing rehabilitation (*id*. 46:21-47:25, 52:14-22, 53:6-22).

Instead, Plaintiff challenges the Stipulation on the ground that it was "tainted by coercion and duress and was not entered into freely." (Pl.'s Mem. 19-24). A contract can indeed be voided on account of duress. *See, e.g.*, *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122

6

(2d Cir. 2001). Findings of duress that permit a party to disown its obligations under a contract, however, are "reserved for extreme and extraordinary cases." *Id.* at 123. In particular, to void a contract on the ground of duress, a party must show "(1) a wrongful threat that (2) precluded the exercise of [that party's] free will." *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011). "[M]ere hard bargaining positions, if lawful, and the press of financial circumstances, not caused by the defendant, will not be deemed duress," *Bus. Incentives Co., Inc. v. Sony Corp. of Am.*, 397 F. Supp. 63, 69 (S.D.N.Y. 1975). Moreover, even if a party can prove the requisite duress at the time of an agreement, it may not be able to disown its obligations under the contract if it has already accepted benefits under the agreement. That is because "acceptance of benefits under the agreement constitutes ratification." *E.E.O.C. v. Am. Express Publ'g Corp.*, 681 F. Supp. 216, 219 (S.D.N.Y. 1988).

Measured against those standards, Plaintiff's arguments fall far short. As an initial matter, most of Plaintiff's allegations are directed at the Union and his Union representative. He alleges, for example, that the Union failed to adequately prepare him for the arbitration (Granger Aff. ¶¶ 9, 11); told him that unless he accepted the settlement, his employment would be terminated and he would face a difficult time obtaining subsequent employment (*id.* ¶ 14); told him it would be futile to hire his own counsel (*id.* ¶¶ 3, 10); and threatened that if he did not accept the Stipulation, the arbitration would proceed and that Defendant had a "room full of doctors" to testify against him (*id.* ¶¶ 13, 17). Even assuming that those allegations would otherwise be sufficient to support a duress claim — a dubious proposition — Plaintiff's reliance on the conduct of his Union and Union representative fails because pressure exerted by his own agents cannot constitute duress as a matter of law. *See Evans v. Waldorf-Astoria Corp.*, 827 F. Supp. 911, 914 (E.D.N.Y. 1993) (rejecting Plaintiff's claim of undue influence by her own

attorney because "[d]uress by other than the opposing party to a contract cannot constitute compulsion sufficient to void the contract"), *aff'd*, 33 F.3d 49 (2d Cir. 1994).  Plaintiff does assert in his memorandum of law that the Union acted "in concert" with Defendant (*see* Pl.'s Mem. 22), but — even drawing all reasonable inferences in his favor — he presents no actual evidence to support that assertion.  *See, e.g.*, *Gottlieb*, 84 F.3d at 518 (providing that a party cannot defeat a summary judgment motion "by relying on . . . conclusory statements").

Plaintiff also argues that Defendant "exacerbate[d]" the financial pressure he was under by "refus[ing] to even allow him to use any of his accrued paid sick days . . . or any of his four weeks of paid vacation entitlement to alleviate the stress of not receiving any income."  (Pl.'s Mem. 19).  Nothing in the CBA, however, dictates or even suggests that Defendant was required to provide such allowances pending resolution of disciplinary charges (*See* CBA § 2.1(c)(8)(D) (stating that an employee who is suspended pending appeal is entitled to be restored to payroll pending final decision after suspension has exceeded thirty days); *see also* CBA App'x E-1), and Plaintiff fails to cite any precedent or policy entitling him to such benefits.  Plaintiff may well have chosen to sign the Stipulation because he was under significant economic pressure, but that alone does not constitute duress, *see, e.g.*, *Bus. Incentives Co.*, 397 F. Supp. at 69, and he fails to show that the pressure was a result of any wrongful conduct of Defendant.  *See, e.g.*, *Kramer v. Vendome Grp. LLC*, No. 11-CV-5245 (RJS), 2012 WL 4841310, at *6 (S.D.N.Y. Oct. 4, 2012) (finding that the pressure to sign a release to obtain health insurance and severance benefits did not constitute improper pressure from Defendant).

Finally, and in any event, even if Plaintiff could show that he entered the Stipulation under duress, his efforts to escape the consequences of his release would fail because he accepted benefits under the agreement.  That is, it is undisputed that Plaintiff avoided the arbitration

hearing, which might well have resulted in his dismissal, and that he was able to — and did — remain employed by Defendant, albeit in a different position, following rehabilitation. (Granger Depo. 53:6-22). Notably, Plaintiff did not file this lawsuit until May 2013, a full year after he had entered into the Stipulation and eight months after he was restored to work pursuant to the terms of the Stipulation. Having accepted the benefits of the Stipulation, he cannot now escape the liability waiver by claiming duress. *See, e.g.*, *Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 128-29 (S.D.N.Y. 2012), *aff'd*, 556 F. App'x 56 (2d Cir. 2014). For that reason as well, the Stipulation is valid, and Plaintiff is bound by his release of Defendant "from any and all claims, whether at law, in equity or arising by virtue of contract which [he] may have or which [he] may have had heretofore in connection with the underlying disputes." (Stipulation ¶ 4). As Plaintiff himself all but concedes, it follows that he is barred from bringing the instant action and that the case must be dismissed as a matter of law. In light of that conclusion, the Court need not — and does not — reach Defendant's other arguments in support of summary judgment.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED, and the Complaint is dismissed. The Clerk of Court is directed to terminate Docket No. 18 and to close the case.

SO ORDERED.

Date: August 15, 2014
New York, New York

_____
JESSE M. FURMAN
United States District Judge

9